

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

| | | | |
|---|---|---|---|
| *Thomas P. Windom*<br>*Assistant United States Attorney*<br>*Thomas.Windom@usdoj.gov* | *Mailing Address:*<br>*6500 Cherrywood Lane, Suite 200*<br>*Greenbelt, MD 20770-1249* | *Office Location:*<br>*6406 Ivy Lane, 8th Floor*<br>*Greenbelt, MD 20770-1249* | *DIRECT: 301-344-0197*<br>*MAIN: 301-344-4433*<br>*FAX: 301-344-4516* |

October 11, 2017

Robert C. Bonsib, Esq.
MarcusBonsib, LLC
6411 Ivy Lane, Suite 116
Greenbelt, Maryland 20770

      Re: <u>United States v. Nghia Hoang Pho</u>
           Criminal No. [TBD]

Dear Mr. Bonsib:

      This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by **October 25, 2017**, it will be deemed withdrawn. The terms of the agreement are as follows:

### Offense of Conviction

      1.    The Defendant agrees to waive indictment and plead guilty to Count One of an Information to be filed against him, which will charge him with Willful Retention of National Defense Information, in violation of 18 U.S.C. § 793(e). The Defendant admits that he is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

      2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

      <u>Count One (Willful Retention of National Defense Information)</u>: (1) the Defendant had unauthorized possession of documents; (2) the documents related to the national defense; and (3) the Defendant willfully retained the documents and failed to deliver them to an officer or agent of the United States who was entitled to receive them.

## Penalties

3. The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: imprisonment for ten years, supervised release for three years, and a fine of $250,000. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4. The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

    a. If the Defendant had persisted in his plea of not guilty, he could have entered a plea of not guilty to any charges contained in an indictment returned by the grand jury. He would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

    b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

    c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

2

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

6. This Office and the Defendant understand, agree, and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following agreed-upon and disputed applicable sentencing guidelines factors:

3

### Count One (Willful Retention of National Defense Information):

  a. The base offense level is **29**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2M3.3(a)(1), because top secret information was gathered.

  b. The offense level is increased by **2** levels, pursuant to U.S.S.G. § 3B1.3, because the Defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.

  c. The adjusted offense level for Count One thus is **31**.

  d. This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty. If the Defendant receives a 3-level reduction, the final offense level will be **28**.

  7. This Office and the Defendant agree that the Defendant's conduct could have been charged as multiple counts. This Office and the Defendant further agree that had the Defendant been convicted of additional counts, pursuant to U.S.S.G. § 3D1.4, those counts would not group with the count of conviction, and the final offense level would have increased by 5 levels.

  8. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a Career Offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

  9. This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures, or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. If the Defendant intends to argue for any factor that could take the sentence outside of the advisory guidelines range, he will notify the Court, the United States Probation Officer, and government counsel at least 14 days in advance of sentencing of the facts or issues he intends to raise.

### Obligations of the Parties

  10. At the time of sentencing, this Office will recommend a term of imprisonment of eight years, followed by three years of supervised release. This Office may also recommend a fine.

11. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character, and conduct, as well as the impact of his conduct on the U.S. Government, including but not limited to the specific harms caused not only by the unlawful retention of the documents referenced in the Information and in this plea agreement, but also by the Government's expenditure and diversion of resources to investigate the totality of information the Defendant retained without authorization.

12. If this agreement is accepted by the Court, this Office agrees not to bring any further charges against the Defendant arising from the conduct set forth in the attached Stipulated Facts.

13. The Defendant agrees to forfeit, and not to seek the return of, any property seized during the execution of the federal search warrant at the Defendant's residence.

14. The Defendant understands and agrees that he has a continuing legal obligation to refrain from the unauthorized oral or written disclosure of classified information, or information relating to the national defense. The Defendant understands and agrees that he shall not disclose, communicate, transmit, or disseminate in any way any classified information, or information relating to the national defense. The Defendant understands and agrees that the law absolutely forbids him from disclosing, communicating, transmitting, or disseminating any classified information, or information relating to the national defense, without regard to where, when, or how he learned of or came into possession of the classified information, or information relating to the national defense. The Defendant further understands and agrees that he is absolutely prohibited from disclosing, communicating, transmitting, or disseminating any classified information, or information relating to the national defense, even if that information can be found in a book, on the Internet, or in any other source that is publically available or not. The Defendant understands and agrees that merely because classified information, or information relating to the national defense, may have appeared publically does not render that information unclassified. The Defendant further understands and agrees that he is prohibited from confirming or providing any detail regarding classification status, technical accuracy, or potential uses for any classified information, including national defense information, that may appear in any public or non-public source. This agreement does not in any way reduce the Defendant's existing obligations not to disclose classified information or other U.S. Government information he learned or received in the course of his employment.

15. The Defendant understands and agrees that he shall not communicate, in any way, verbally or in writing, including any electronic means of communication, information relating to classified subject areas to which the Defendant was exposed while working for the United States government, without first obtaining the express written permission of all relevant agencies or components of the United States government.

16. The Defendant understands and agrees that he shall comply with all obligations to which he is subject for pre-publication review and shall not collaborate on, consult about, or otherwise assist or be involved with any communication of information relating to classified subject areas to which he was exposed while working for the United States government with any

other person, without first obtaining the express written permission of all relevant agencies or components of the United States government. This prohibition includes, but is not limited to, any interviews of the Defendant, or anyone representing or acting on his behalf, by the media or others. This prohibition also includes any documents, computer code, or other information created by the Defendant in whole or in part, and any other papers, books, writings, electronic communications, articles, films, or other productions relating to him or his work for the United States government, or the events leading to his conviction.

17. The Defendant hereby assigns to the United States any compensation, profits, proceeds, fee, honorarium, money, or payment of any kind (collectively "compensation") which he may otherwise be entitled to receive in connection with any publication or dissemination of information relating to his work for the United States government, and the facts and circumstances of the investigation of his activities, or his prosecution, sentencing, or incarceration in this matter. This assignment includes, but is not limited to, any compensation provided to the Defendant in connection with any book, writing, electronic communication, computer code, article, film, documentary, or other production. This assignment includes all compensation for the benefit of the Defendant, regardless of whether such compensation is payable to him or others, directly or indirectly, for his benefit, or the benefit of his associates or a current, former, or future member of his family. The Defendant shall not circumvent this assignment by assigning the rights to his story to an associate or to a current, former, or future member of his family, or to another person or entity who would provide some financial benefit to him, to his associates, or to a current, former, or future member of his family. Moreover, the Defendant shall not circumvent this assignment by communicating with an associate or family member for the purpose of assisting or facilitating their profiting from a public or private dissemination, whether or not such an associate or other family member is personally or directly involved in such dissemination.

18. The Defendant understands and agrees that any requests for permission to engage in communications described in the above paragraphs must be made in writing to the relevant agencies or components of the United States government for instructions on how to submit a request, and then must submit any such request pursuant to those instructions. No agency or component of the United States government is required to grant such permission to the Defendant, and the manner and timeliness of the review of any such request by him is at the sole discretion of the relevant agencies or components of the United States government.

19. The Defendant understands and agrees that he shall have no contact with any foreign government, or agents thereof, except with the express written permission of the Federal Bureau of Investigation. The Defendant shall not seek or accept, personally or through another person or entity, any benefit from any foreign government or agent thereof. Should such a benefit be received by the Defendant, or some person or entity on his behalf, the Defendant hereby assigns any such benefit to the United States.

### Restitution

20. The Defendant agrees to the entry of a Restitution Order in the full amount of the victims' losses, which will be determined prior to sentencing. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution

of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation, and that the United States Government and the National Security Agency are victims of the offense. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of funds obtained as a result of the criminal conduct set forth in the factual stipulation as well as any funds that may be available as substitute assets for the purpose of restitution. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Forfeiture

21. The Defendant understands that the Court will, upon acceptance of his guilty plea, enter an order of forfeiture as part of his sentence, and that the order of forfeiture may include assets directly traceable to his offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense. Specifically, the court will order the forfeiture of all property, real and personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from the offense, and any property, real and personal, involved in any such offense, or any property traceable to such property. The Defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. This Office agrees to seek the Attorney General's approval to apply forfeited assets to the Defendant's Restitution Order.

## Assisting the Government with Regard to the Forfeiture

22. The Defendant agrees to assist fully in the forfeiture of the foregoing assets. The Defendant agrees to disclose all of his assets and sources of income to the United States, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including but not limited to executing any and all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden or otherwise made unavailable for forfeiture. The Defendant further agrees that he will not assist any third party in asserting a claim to the forfeited assets in an ancillary proceeding and that he will testify truthfully in any such proceeding.

## Waiver of Further Review of Forfeiture

23. The Defendant further agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The Defendant also agrees not to challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this

agreement, and will not assist any third party with regard to such challenge or review or with regard to the filing of a petition for remission of forfeiture.

### Collection of Financial Obligations

24. The Defendant expressly authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The Defendant will promptly submit a completed financial statement to this Office, in a form this Office prescribes and as it directs. The Defendant promises that the financial statement and disclosures will be complete, accurate and truthful, and understands that any willful falsehood on the financial statement will be a separate crime and may be punished under 18 U.S.C. § 1001 by an additional five years' incarceration and fine.

### Tax Liability

25. The Defendant understands that this agreement does not resolve any civil or criminal tax liability that he may have as a result of his offenses, and that this agreement is with the United States Attorney's Office for the District of Maryland, and not with the Internal Revenue Service or the Tax Division of the United States Department of Justice. The Internal Revenue Service is not a party to this agreement and remains free to pursue any and all lawful remedies it may have.

### Waiver of Appeal

26. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction.

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds any sentence within the advisory guidelines range resulting from an adjusted base offense level of 28, and (ii) this Office reserves the right to appeal any term of imprisonment to the extent that it is below any sentence within the advisory guidelines range resulting from an adjusted base offense level of 28.

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from

appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

        d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

### Obstruction or Other Violations of Law

27.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state, or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

### Court Not a Party

28.      The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

29. This agreement supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this agreement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this letter, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Stephen M. Schenning
Acting United States Attorney

By: _____
Thomas P. Windom
Nicolas A. Mitchell
Assistant United States Attorneys

_____
Thea D. R. Kendler
Trial Attorney, U.S. Department of Justice
National Security Division

I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

11/28/2017
Date

_____
Nghia Hoang Pho

I am Nghia Hoang Pho's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

11/28/17
Date

_____
Robert C. Bonsib, Esq.
Counsel for Defendant Nghia Hoang Pho

10

## ATTACHMENT A

## STIPULATED FACTS –
## UNITED STATES v. NGHIA HOANG PHO

*If this matter had proceeded to trial, the Government would have proven the following facts beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

### The Defendant

Defendant **NGHIA HOANG PHO** ("**PHO**") was a resident of Ellicott City, Maryland. Beginning in or about April 2006, and continuing through in or about 2016, **PHO** was employed as a Tailored Access Operations ("TAO")[1] developer for the National Security Agency ("NSA") in Maryland. In connection with his employment, **PHO** held various security clearances and had access to national defense and classified information.

### Classified Information

Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or "CONFIDENTIAL." National security information was information owned by, produced by, produced for, and under the control of the United States government that was classified as follows: (a) Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify and describe; (b) Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe; and (c) Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority is able to identify and describe.

Access to national security information classified at any level could be further restricted through compartmentation in Sensitive Compartmented Information ("SCI") categories. Only individuals with the appropriate security clearance and additional SCI access(es) could have access to such classified national security information.

Classified information, including SCI, was marked according to its classification and applicable SCI compartments, following standard formats for different types of media, including headers and footers stating the highest classification level and SCI compartments of information a document contained and individual classifications markings for each paragraph.

---

[1] At some point during **PHO**'s employment, portions of TAO's responsibilities were reorganized into Computer Network Operations ("CNO").

11

Information classified at any level could only be accessed by persons determined by an appropriate United States government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, who received a security clearance, and who had a need to know the classified information. Classified information could only be stored in an approved facility and container.

### National Security Agency

The NSA was a U.S. government intelligence agency with various offices and facilities, and was a component of the United States Intelligence Community and the United States Department of Defense ("DoD"). The NSA's primary facility and headquarters were at Fort Meade in the District of Maryland. The NSA was responsible for, among other things, collecting, processing, and disseminating intelligence derived from intercepted foreign communications to U.S. policy-makers and military forces, and protecting secure government systems that handle classified information and are otherwise critical to military and intelligence agencies. The NSA's TAO involved operations and intelligence collection to gather data from target or foreign automated information systems or networks and also involved actions taken to prevent, detect, and respond to unauthorized activity within DoD information systems and computer networks, for the United States and its allies.

### The Defendant's Training Regarding, and Access to, Classified Information

**PHO** was required to receive and maintain a security clearance to be employed at the NSA. **PHO** held security clearances up to TOP SECRET/SCI.

Over his many years holding a security clearance, **PHO** received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. **PHO** received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. **PHO** was told that unauthorized removal of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could endanger the national security of the United States and the safety of its citizens. In particular, **PHO** had been advised that unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States, and that violation of rules governing the handling of classified information could result in criminal prosecution.

**PHO** worked on highly classified, specialized projects and had access to government computer systems, programs, and information, including classified information.

### The Defendant's Removal and Retention of National Defense and Classified Information

Because **PHO** held a security clearance and was an NSA employee, the United States Government entrusted **PHO** with access to sensitive government materials, including information

relating to the national defense that was closely held by the government ("National Defense Information") and classified documents, writings, and materials.

Beginning in or about 2010 and continuing through in or about March 2015, **PHO** removed and retained U.S. government property, including documents and writings. Many of the documents and writings **PHO** removed and retained bore standard markings indicating that they contained highly classified information of the United States, including TOP SECRET and SCI information. The information in the classified documents and writings included National Defense Information.

**PHO** retained documents and writings, in hard copy and digital form, containing National Defense Information and classified information in a number of locations within his residence in the District of Maryland. **PHO** knew that the documents and writings contained classified information that related to the national defense. **PHO** was never authorized to retain these documents and writings at his residence. **PHO** knew that he was not authorized to remove National Defense Information and classified documents and writings from secure locations and was not authorized to retain them at his residence. **PHO** willfully and unlawfully retained documents and writings that contained National Defense Information, including classified documents and writings, which were classified as TOP SECRET and SCI.

On or about March 9, 2015, in the District of Maryland and elsewhere, **PHO**, having unauthorized possession of, access to, and control over documents and writings relating to the national defense, willfully retained the documents and writings and failed to deliver them to the officer or employee of the United States entitled to receive them.

\* \* \*

I have read this statement of facts and carefully reviewed it with my attorney. I acknowledge that it is true and correct.

11/28/2017
Date

_____
Nghia Hoang Pho

I am Nghia Hoang Pho's attorney. I have carefully reviewed the statement of facts with him.

11/28/17
Date

_____
Robert C. Bonsib, Esq.
Counsel for Nghia Hoang Pho